**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MARK W. WANKEL, and** | ) | |
| **DEBRA WANKEL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-cv-0619-MJR** |
| | ) | |
| **SOUTHERN ILLINOIS BANCORP, INC.,** | ) | |
| **REGIONS BANK, MITCHELL FERREE,** | ) | |
| **ALVIN FRITSCHLE, DONNA** | ) | |
| **HODGSON, NIKKI ROSER,** | ) | |
| **RON ABSHER, JAMES ZIEREN,** | ) | |
| **JAMES T. GAINES, and GARY** | ) | |
| **FINCH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### A. Factual and Procedural History

On August 9, 2006, Plaintiffs Mark and Debra Wankel filed suit in this Court against

several defendants: Regions Bank, as successor to Union Planters Bank, N.A. ("Union Planters"),

Mitchell Ferree, an employee of Union Planters, Southern Illinois Bancorp, Inc., as parent holding

company for First National Bank of Carmi ("First Bank"), and Alvin Fritschle, Nikki Roser, Donna

Hodgson, Ron Absher, James T. Gaines, James Zieren and Gary Finch, as directors, officers and/or

employees of First Bank.

In Counts One and Two of Plaintiffs' four-count complaint (Doc. 2, "Complaint"),

Plaintiffs claim that Defendants collectively violated three separate provisions of the Racketeer

Influenced and Corrupt Organizations Act of 1970 ("RICO"), **18 U.S.C. § 1961 *et seq*.**   In Counts

Three and Four, Plaintiffs assert two pendant state law claims for common law fraud (*see* Complaint, pp. 18-19).

The crux of Plaintiffs' cause of action is Plaintiff Mark Wankel's dealings with one Kevin Williams ("Williams") and two specific loan transactions with Union Planters and First Bank. Specifically, Plaintiffs allege that Williams, a certified public accountant, owned and operated American Auto Centers, Inc. ("American Auto"), a retail used automotive sales business in Illinois (Complaint, ¶ 16). Williams opened checking accounts for American Auto with both First Bank and Union Planters. Thereafter, "from an indeterminate time in September 2003 until March 10, 2004," Williams engaged in a check kiting scheme between American Auto's accounts at First Bank and Union Planters (Complaint, ¶ 20). Williams' check kiting activity resulted in substantial overdrafts in both accounts (Complaint, ¶¶ 20-26).

Rather than revealing his check kiting scheme and the consequences thereof, Williams allegedly informed Mark Wankel that an employee of American Auto had embezzled money from its bank accounts and that the overdrafts had to be covered (Complaint, ¶ 28). Williams further assured Mark Wankel that the overdrafts were "no big deal" and assured him that there was "plenty of equity" in the American Auto account to cover those overdrafts (Complaint, ¶ 28a-b). These assurances by Williams were false and allegedly made with the intent that Mark Wankel would rely on them (Complaint, ¶ 28c-e).

Thereafter, Plaintiffs allege, they were defrauded through the combined efforts of the defendants into guaranteeing and subsequently purchasing a $360,726.28 loan from First Bank to Williams to cover the overdraft in American Auto's bank account (Complaint, ¶¶ 36, 41, 43). First Bank and its employees allegedly failed to inform Plaintiffs of Williams' check kiting scheme and

financial difficulties prior to Plaintiffs' purchase of the loan and in violation of the Loan Participation Agreement (Complaint, ¶¶ 43-50).

In addition, Plaintiffs also received a $400,000 loan from Union Planters.  Plaintiffs assert that Union Planters and its employees failed to disclose that the loan proceeds would be used to cover the deficiency caused by Williams' check kiting, but instead represented that the proceeds would be used as an investment into Williams' business (Complaint, ¶ 33a).  Notably, although Plaintiffs admit to executing a "Hold Harmless Agreement" in connection with the Union Planters loan, Plaintiffs allege that Defendants fraudulently induced them into entering that agreement (Complaint, ¶ 33b).

As a "direct result" of Defendants' alleged scheme to defraud Plaintiffs, Plaintiffs assert, they have been damaged "in the approximate amount of $1,357,071.28, plus interest charged, accrued, and or paid" (Complaint, ¶ 63).

Now before the Court is Defendant Regions Bank's motion to dismiss pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Doc. 29) and memorandum in support (Doc. 40). Therein, Regions Bank argues that Counts One and Two of Plaintiffs' Complaint should be dismissed as a matter of law for two main reasons: (1) the allegations are insufficient to state a claim under any section of RICO and lack particularity required under FEDERAL RULE OF CIVIL PROCEDURE 9(b); and (2) Plaintiffs, who are not financial institutions, lack standing to assert bank fraud as a predicate act under RICO.

## B. **Analysis**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted.  When considering a motion to dismiss for failure

3

to state a claim, the Court accepts the plaintiff's allegations as true, and construes all inferences in favor of the plaintiff. *Hishon v. King & Spalding,* **467 U.S. 69, 73 (1984)**; *Thompson v. Ill. Dep't of Prof. Regulation,* **300 F.3d 750, 753 (7th Cir. 2002).**  Dismissal for failure to state a claim is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mattice v. Memorial Hosp. Of South Bend, Inc.,* **249 F.3d 682, 684 (7th Cir. 2001), citing** *Conley v. Gibson,* **355 U.S. 41, 45-46 (1957).  *Accord Hishon,* 467 U.S. 69, 73 (Rule 12(b)(6) dismissal is appropriate only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").**

Nonetheless, in the RICO context, allegations of fraudulent conduct must specify, with particularity, the circumstances of the alleged fraud. *Slaney v. The Intern. Amateur Athletic Fed'n,* **244 F.3d 580, 597 (7th Cir. 2001);** *Haroco, Inc. v. Am. Nat. Bank and Trust Co.,* **747 F.2d 384, 405 (7th Cir. 1984)**.  To meet this standard, a plaintiff must describe predicate acts of fraud with specificity and the "time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney,* **244 F.3d at 597.**

In Count One, Plaintiffs allege that Defendants violated RICO.  RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." **18 U.S.C. § 1962(c).** To state a claim for relief under this section, Plaintiffs must show (1) conduct affecting interstate or foreign commerce (2) of an enterprise (3) through a pattern

4

(4) of racketeering activity. ***Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995).**

In Count Two, Plaintiffs allege that Defendants violated the RICO conspiracy law. To state a claim for RICO conspiracy, the claimant must allege an agreement to violate RICO, and not the violations themselves. "[T]he touchstone of liability under § 1962(d) is an agreement to participate in endeavors which, if completed, would constitute a violation of the substantive statute." ***Slaney*, 244 F.3d at 588.** In Count Two, in describing the endeavors in which the co-conspirators allegedly agreed to participate, Plaintiffs simply reincorporate by reference the allegations regarding the RICO violation described in Count One of their complaint (*see* Complaint, ¶¶ 70-73). Accordingly, if the acts described in Count One would not constitute a violation of RICO, then it follows that there can be no violation of RICO conspiracy for the alleged agreement.

In its motion to dismiss (Doc. 29), Regions Bank makes several arguments for dismissal. The Court first analyzes Region Bank's assertion that Plaintiffs have failed to adequately plead a pattern of racketeering activity under RICO.

### Whether Plaintiffs Have Plead Racketeering Activity Under RICO

A pattern of racketeering activity consists of at least two predicate acts of racketeering– including mail fraud under 18 U.S.C. § 1341, bank fraud under 18 U.S.C. § 1344 and wire fraud under 18 U.S.C. § 1343 – committed within a ten-year period. **18 U.S.C. § 1961(5)**. Whether a pattern of racketeering activity exists is a fact-specific inquiry which hinges on, among other things: "(1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." ***Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 962-63 (7th**

5

**Cir. 1996).** These considerations, termed the *Morgan* factors after the Seventh Circuit's decision in ***Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986)**, are now analyzed "with an eye towards achieving a natural and common sense result." ***420 E. Ohio Ltd. P-Ship v. Cocose*, 980 F.2d 1122, 1124 (7th Cir. 1992) (internal citation and quotations omitted).** The *Morgan* factors are used to analyze whether a particular factual situation meets the "continuity plus relationship" test set forth by the Supreme Court in ***Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).**  Under this test, "the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." ***Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239) (1989).**

The Seventh Circuit, along with its sister circuits, has stressed a common sense approach to the pattern requirement in a RICO action. ***See, e.g., U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1267 (7th Cir. 1990); *420 E. Ohio Ltd. P-Ship*, 980 F.2d at 1124**. To this end, courts must remember that Congress "intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes." ***Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986)**. Thus, there "must be some indication of a threat of continuing activity by the defendants, not just one instance of fraud with a single victim." ***Id.* (internal quotation and citation omitted).** In the end, Courts must be cognizant that "RICO is not aimed at the isolated offender," *id.,* but is meant to deter "long-term criminal conduct." ***H.J., Inc.*, 492 U.S. at 242.**

*Predicate Acts*

In this matter, Plaintiffs assert predicate acts of bank fraud, mail fraud and wire fraud (Complaint, pp. 12-15).  Regions Bank argues that each averment is inadequate.

The first predicate act Plaintiffs assert is bank fraud. Bank fraud is a scheme (i) to defraud a financial institution, or (ii) to obtain assets owned by, or under the custody or control of, a financial institution, under false pretenses. **18 U.S.C. § 1344.** The bank fraud statute does not provide a claim unless the alleged fraud is targeted at a financial institution. ***United States v. Blackmon*, 839 F.2d 900 (2nd Cir. 1989)(analyzing the legislative history of § 1344); *United States v. Rodriguez*, 140 F.2d 163 (2nd Cir. 1998).** Accordingly, the Seventh Circuit has repeatedly rejected attempts by individuals to assert bank fraud as the basis for a RICO claim, declaring that "the bank fraud statute ... is designed to protect banks." ***See Bressner v. Ambroziak,* 379 F.3d 478, 482 (7th Cir. 2004).** "In order for the bank fraud statute to apply, the fraud must be against the bank." ***Id.***

In this matter, it is obvious that Plaintiffs are individuals, not banks or financial institutions.  Accordingly, Plaintiffs lack standing to plead bank fraud as a predicate act for purposes of their RICO claim.  Plaintiffs admit this fact: "[Plaintiffs] concede they lack standing to bring a RICO claim based on predicate acts of bank fraud ..." (Doc. 51, p. 7). Consequently, the Court will disregard Plaintiffs' averments of bank fraud in determining whether Plaintiffs have adequately plead a pattern of racketeering activity.

Because Plaintiffs lack standing to assert bank fraud, Plaintiffs' RICO claim hinges on their mail fraud and wire fraud averments.  A legally sufficient claim of mail fraud under **18**

U.S.C. § 1341 requires a plaintiff to allege that the defendant: (1) participated in a scheme to defraud; (2) commissioned the act with intent to defraud; and (3) used the mail in furtherance of the fraudulent scheme. ***Williams v. Aztar Ind. Gaming Corp.***, **351 F.3d 294, 298- 99 (7th Cir. 2003);** ***McDonald v. Schencker***, **18 F.3d 491, 494 (7th Cir. 1994).**  As mentioned, the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all averments of fraud *with particularity,* governs allegations of fraud in a civil RICO complaint. ***Goren v. New Vision Int'l, Inc.,*** **156 F.3d 721, 726 (7th Cir. 1988).**

Accordingly, the Seventh Circuit has held that a RICO plaintiff must "at a minimum," describe predicate acts of fraud "with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." ***Slaney,*** **244 F.3d at 597.**  Merely referencing "mailings and telephone calls in furtherance of a purported scheme to defraud" will not suffice. ***Jepson, Inc. v. Makita Corp.,*** **34 F.3d 1321, 1328 (7th Cir. 1994).**

In the case at bar, Plaintiffs' complaint contains three allegations of mail fraud (Complaint, ¶ 57a-c).  The first allegation is "[a] July 26, 2004 letter to Williams from Alvin D. Fritschle informing Williams of and in connection with First Bank's sale of the Note to [Plaintiff]" (Complaint, ¶ 57a).  Although this allegation contains the names of the sender and recipient of the communication, as well as the date the communication was sent, the allegation remains decidedly vague regarding the particular purpose or contents of the letter.  Confusingly, Plaintiffs describe the letter as "informing Williams of and in connection with" the sale of the note. *Id*.  This Court is hesitant to deem such language adequate to meet the requirements of Rule 9(b).  Describing a letter

as "in connection with" a transaction is certainly too vague.  And describing the letter simply as "informing Williams of" the transaction is not much better, as it leaves open the question of how, specifically, the letter furthered the alleged fraudulent scheme.  In light of these deficiencies, this allegation only barely passes muster under Rule 9(b), if at all.

Regarding the second and third allegations of mail fraud, the Court's analysis is simpler.  The second allegation that Plaintiffs assert is: "[t]he mailing of correspondence and other documents related to the check kiting mentioned herein between Union Planters and First Bank by and between March 16 and March 18, 2004" (Complaint, ¶ 57b).  Union Planters and First Bank are business entities in and of themselves incapable of sending correspondence to each other.  Despite this fact, Plaintiffs have failed to specify any individuals who sent the correspondence on behalf of those entities.  In addition, the allegation is too vague as to the time, place, and content of those communications.

Plaintiffs' third allegation of mail fraud is more vague than their second.  Plaintiffs third allegation is "the mailing of payment past due notices and other correspondence to Mark Wankel, though (sic) the month of July 2006" (Complaint, ¶ 57c).  This allegation is vague in nearly every respect; Plaintiffs have not described the time, place, and content of the communications or identified all the parties to these communications. "These details are mandated not only by Rule 9(b), but by the very nature of the RICO claim." ***Jepson, Inc., v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).**

In sum, for the foregoing reasons, the Court finds that Plaintiffs' second and third allegations of mail fraud are insufficient under Rule 9(b) and the sufficiency of Plaintiffs' first

allegation is questionable at best.

Regarding Plaintiffs' allegations of wire fraud, Plaintiffs assert five separate acts that allegedly constituted wire fraud: (a) Union Planters' faxing a Hold Harmless Agreement from Indiana to Illinois for Plaintiffs' signatures on April 1, 2004; (b) the April 6 and July 23, 2004 telephone calls among and between Fritschle, Absher, Zieren, and Finch; (c) the April 16, 2004 telephone call between Ms. Roser and Mr. Ferree; (d) $469,464 being wired from Cincinnati, Ohio to First National Bank of Allendale, Mt. Carmel, further credit to Mark Wankel's account with Wabash Saving Bank; and (e) Defendants' repeated use of the wires to attempt to collect money from Plaintiffs (Complaint, ¶¶ 59-60).

The Court finds problems with these allegations.  First, the Court notes that the wire fraud statute prohibits the use of *interstate* wires to effect "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." **18 U.S.C. § 1343 (emphasis added).**  As such, interstate communication is an essential element of a wire fraud violation. ***See United States v. Freeman,* 524 F.2d 337, 339 (7th Cir. 1975).**  In the case at bar, the allegations in Paragraph 59b of Plaintiffs' Complaint – "April 6 and July 23, 2004 telephone calls among and between Fritschle, Absher, Zieren, and Finch ..." – fail to mention the use of interstate wires, and given the Illinois residence of all the parties involved, it would not be reasonable to infer that any such use occurred.  Accordingly, that averment is insufficient to support a RICO claim based on wire fraud.

Moreover, the allegations in paragraph 60 of Plaintiffs' complaint also fail to pass muster.  First, the general allegation that "Defendants have repeatedly used the wires to attempt to

collect money from Plaintiffs ..." is far too vague to meet the particularity requirements of Rule 9(b). In addition, to the extent the allegations in paragraph 60 *are* particular enough to pass muster under Rule 9(b), those allegations still are insufficient to support a RICO wire fraud claim for the following reasons.

As mentioned, in establishing a RICO violation, the mailings or wire correspondence must be in *furtherance* of the purportedly fraudulent scheme. Mailings or use of wires "are in furtherance of a scheme if they are incidental to an essential part of the scheme." ***Spiegel v. Continental Illinois Nat. Bank,* 790 F.2d 638, 649 (7th Cir. 1986).** "[M]ailings made *after the scheme has reached its fruition* are not in furtherance of the scheme, nor are mailings which conflict with the purposes of the scheme and have little effect upon the scheme." ***United States v. Staszcuk,* 502 F.2d 875 (7th Cir. 1974)(emphasis added).** The telephone calls mentioned in paragraph 60 of Plaintiffs' complaint occurred *after* Mark Wankel was allegedly lured by Defendants to borrow money from Union Planters on April 1, 2004, and purchase the First Bank Loan on July 23, 2004.

By all indications, the telephone calls made by Donna Hodgson and Jason Kruse to Mark Wankel were nothing more than bank employees' routine attempts to collect payment on outstanding loans. Nothing in Plaintiffs' complaint indicates that Mark Wankel was treated any differently than any other customer refusing to re-pay an outstanding loan with either institution. Nor is there any indication that the calls contained misrepresentations or were fraudulent in themselves. Plaintiffs' attempt to portray this normal course of business as somehow being a continuance of the fraudulent scheme alleged in the body of their complaint is without merit. Accordingly, the allegations contained in paragraph 60 of Plaintiffs' complaint are insufficient to

support a RICO claim based on wire fraud.

In light of these determinations, Plaintiffs are left with the following predicate acts to support their RICO claim:

(a) the July 26, 2004 letter to Williams from Alvin D. Fritschle informing Williams of and in connection with First Bank's sale of the Note to Plaintiffs

(b) Union Planters' faxing a Hold Harmless Agreement from Indiana to Illinois for Plaintiffs' signatures on April 1, 2004;

(c) the April 16, 2004 telephone call between Ms. Roser and Mr. Ferree;

(d) on April 14, 2004, $469,464 being wired from Cincinnati, Ohio to First National Bank of Allendale, Mt. Carmel, further credit to Mark Wankel's account with Wabash Saving Bank.

Having determined those predicate acts that are sufficient to support Plaintiffs' claims, the Court will now apply the *Morgan* factors in order to determine if these acts meet the "continuity plus relationship" test set forth by the Supreme Court in *Sedima*. **473 U.S. 479 (1985).**

*Relationship*

The relationship prong of the racketeering test is satisfied if the predicate acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." ***H.J. Inc.,* 492 U.S. at 240 (quoting 18 U.S.C. § 3575(e)).** The relationship must imply that "the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." ***U.S. Textiles, Inc.,* 911 F.2d at 1267.** After reviewing the complaint in its entirety, the Court finds that the four predicate acts sufficient to support Plaintiffs' RICO claim were

undertaken pursuant to a scheme to fraudulently induce Mark Wankel to enter into the loan agreements.  Accordingly, the Court finds that Plaintiffs have pleaded the relationship requirement regarding Defendants' predicate acts.

*Continuity*

As mentioned, in *Morgan v. Bank of Waukegan,* the Seventh Circuit delineated five factors courts should examine in determining whether the predicate acts alleged are sufficiently continuous to constitute a pattern: "(1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." ***Morgan,* 804 F.2d at 975.**  As this Court has already stated, these considerations are to be applied with an eye toward achieving a "natural and common sense result." ***Vicom, Inc. v. Hardbridge Merch. Serv., Inc.,* 20 F.3d 771, 780 (7th Cir. 1994).**  The continuity prong can be satisfied in two ways: by showing a close- or open-ended period of racketeering activity.

**Close-Ended Racketeering Activity**

"As its label suggests, a 'close-ended' period of racketeering activity involves a course of criminal conduct which has come to a close." ***Midwest Grinding,* 976 F.2d at 1022.**

Regarding the first *Morgan* factor – number and variety of predicate acts, the Court notes that Plaintiffs have plead a total of only four predicate acts that sufficiently support their RICO claim – one act of mail fraud and three acts of wire fraud.  Although four acts satisfies the minimum requirement of two predicate acts to make out a RICO claim, Courts have historically viewed allegations of mail and wire fraud as relatively weak support for such claims.  For instance, in *Gagan*

13

*v. American Cablevision*, the Seventh Circuit noted, like the Supreme Court and the other courts of appeals, that many plaintiffs try to "dress up" state law fraud claims using as their tool the expansive definitions of mail and wire fraud under federal law. ***Gagan*, 77 F.3d at 963.**  The Seventh Circuit has held several times that RICO claims based on mail and wire fraud are unique because the multiplicity of the individual instances of this type of fraud do not suggest that future occurrences of fraudulent conduct are likely. ***See, e.g., id.*; *U.S. Textiles, Inc.*, 911 F.2d at 1268; *J.D. Marshall Intern.*, 935 F.2d at 819-20.**

Regarding duration – "the single most important aspect of the close-ended continuity analysis," *Vicom*, **20 F.3d at 781,** when a plaintiff alleges a "close-ended" period of racketeering activity, he must prove that this activity continued for a "substantial period of time." ***Midwest Grinding*, 976 F.2d at 1022-23 ("The underlying rationale is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future."); *H.J. Inc.*, 492 U.S. at 242.** The Supreme Court has said that acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." ***H.J. Inc.*, 492 U.S. at 242.**  Though somewhat hesitant to construct a bright line period of time which is "substantial" for these purposes, the Seventh Circuit has indicated that a period less than 2 years in a case such as this is probably insufficient. ***See Midwest Grinding*, 976 F.2d at 1024 (nine months insufficient); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (finding that allegations involving multiple acts of mail fraud over a period of years insufficient when they were in furtherance of a single scheme and the injuries were not distinct); *J.D. Marshall Intern., Inc. v. Redstart, Inc.*, 935 F.2d 815, 819-20 (7th Cir. 1991) (thirteen-month period**

14

**insufficient to show necessary pattern)** *420 E. Ohio Ltd. P'Ship*, 980 F.2d at 1225 ("[W]e do not believe six months qualifies as [a] 'substantial period of time'"); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) ("The cases in our circuit . . .demonstrate that a time frame of less than nine months likely does not satisfy the duration requirement.").**

In the case at bar, the predicate offenses of mail and wire fraud occurred over a period of less than four months – from April 1, 2004 to July 26, 2004.  This Court knows of no Seventh Circuit case that has held that such a short time frame satisfies the durational aspect of closed-ended continuity.  Accordingly, under Seventh Circuit caselaw, Plaintiffs' RICO claim fails to meet the duration aspect of close-ended continuity.

Regarding the number of victims, the Court notes that the alleged scheme seems to have been directed only against Mark Wankel; nonetheless, the predicate acts in which Plaintiffs allege the Defendants have engaged would have the effect of also victimizing Debra Wankel.  Still, two victims in the RICO context is relatively few, and is "in no way dispositive of whether the predicate acts ... can support a findings that continuity exists." ***Vicom,* 20 F.3d at 771, citing *Olive Can Co. v. Martin,* 906 F.2d 1147, 1151 (7th Cir. 1990)(although there were "a large number of predicate acts" and "a number of victims," the short time frame and lack of variety in the predicate acts militated against finding continuity).**

Regarding the number of schemes, Plaintiffs allege only a single scheme to defraud Plaintiffs into covering the deficiencies caused by Williams' check kiting activity.  Though cognizant of the holding in *H.J., Inc. – i.e.,* multiple schemes are not required to establish a RICO violation –

15

the Seventh Circuit still views the existence of one scheme as a factor which strongly suggests that the requisite continuity does not exist. ***U.S. Textiles, Inc.*, 911 F.2d at 1263-68.**

Finally, the alleged scheme here did not result in "distinct" injuries as that term is used in RICO cases.  In *U.S. Textiles, Inc.*, the Seventh Circuit analyzed the term "distinct" in this context. There, the Court found that the plaintiff did not suffer separate and distinct injuries from multiple deliveries it made under a single contract over the course of several years. ***U.S. Textiles, Inc.*, 911 F.2d at 1268-69.** Taking a "natural and common sense approach" the court held that "identical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries Congress intended to compensate via" RICO. *Id., see also, J.D. Marshal Intern. Inc.*, **935 F.2d at 820 & 821 (finding that allegations of fraud "involv[ing] the same type of misconduct . . . occurr[ing] within . . . thirteen months . . . and . . . all related by a common purpose" did not show a genuine threat of continued criminal activity);** *Elliott v. Chicago Motor Club Ins.***, 809 F.2d 347, 350 (7th Cir. 1986) ("Because [the] predicate acts all clearly relate to the same transaction involving a single insurance policy and arising out of one accident, the acts do not support the continuity aspect of the pattern of racketeering.").**

As the term "distinct" is defined and applied in the Seventh Circuit, the Court finds that Plaintiffs have failed to assert that they have suffered "distinct" injuries. Like the plaintiff in *U.S. Textiles,* Plaintiffs' alleged economic injuries in this matter all stem from the one alleged scheme to defraud Plaintiffs into covering American Auto's deficiencies.

In sum, for the reasons mentioned *supra,* the Court concludes that Plaintiffs' complaint does not include allegations from which this Court can conclude that Defendants engaged

16

in a pattern of racketeering activity under the close-ended continuity prong.  Defendants' alleged scheme was carried out over the course of only four months, involved only two victims, and did not involve a significant variety or number of predicate acts.  A "natural and common-sense approach"reveals that Defendants' alleged actions are not of the sort indicative of future criminal conduct and do not support an inference that Defendants are career criminals who are likely to perpetrate similar acts again.

### Open-Ended Racketeering Activity

"An open-ended period of racketeering . . . is a course of criminal activity which lacks the duration and repetition to establish continuity." ***Midwest Grinding*, 976 F.2d at 1023**. Even so, a plaintiff can meet the continuity prong of the "continuity plus relationship" test by "showing past conduct which 'by its nature projects into the future with a threat of repetition.'" ***Id.* (quoting *H.J. Inc.,* 492 U.S. at 242)**. This threat of continuity exists when a plaintiff can show "(1) a 'specific threat of repetition,' (2) that the 'predicate acts or offenses are part of an ongoing entity's regular way of doing business,' or (3) that the defendant operates a 'long-term association that exists for criminal purposes.'" ***Midwest Grinding*, 976 F.2d at 1023 (quoting *H.J. Inc.,* 492 U.S. at 242-43)**.

In the case at bar, the Court finds no specific threat of repetition.  As mentioned, the scheme was consummated when Plaintiffs obtained the Union Planters Loan and purchased the First Bank loan.  As mentioned, any future collection efforts on the part of either bank cannot reasonably be considered a continuation of that scheme; but rather constitute the normal course of business for those institutions in collecting on all unpaid loans.

In addition, Plaintiffs have given this Court no reason to conclude that the predicate

17

acts are part of Defendants' regular way of doing business.  Although Plaintiffs assert in their response that "the fraudulent activity described in [Plaintiffs' Complaint] is engrained within financial institutions [and] has no clear termination point ..." the Court finds within the record of this matter no basis whatsoever to draw such a conclusion.  Finally, from a "natural and common-sense" perspective, there is absolutely no indication that Defendants collectively operate "a long-term association that exists for criminal purposes." *H.J. Inc.,* **492 U.S. at 242-43**

Accordingly, for the above-stated reasons, the Court finds that Plaintiffs cannot show the requisite continuity under the open-ended analysis either.  Consequently, this Court concludes that Plaintiffs are unable to meet the continuity requirement and are therefore unable to show a pattern of racketeering activity sufficient to support their RICO claim.  Because this fact alone requires that this Court dismiss Plaintiffs RICO claim pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6),** this Court need not consider Defendants' other arguments for dismissal.  Nonetheless, the Court notes in passing that Plaintiffs' RICO claim also appears to fall short of adequately alleging a criminal "enterprise" as that term is defined under RICO.  In other words, even if this Court were to assume *arguendo* that Plaintiffs have alleged a pattern of racketeering activity, dismissal of this matter likely would still be appropriate on those grounds.

Overall, this Court is cognizant of the fact that "[g]iven RICO's generous civil awards, [ambiguity in RICO's wording] has lead (not surprisingly) to widespread attempts to turn routine commercial disputes into civil RICO actions." *Midwest Grinding,* **976 F.2d at 1022.** Viewing Plaintiffs' complaint as a whole, it seems that Plaintiffs' cause of action constitutes precisely what the Supreme Court and Seventh Circuit courts hope to forestall: "RICO's use against

18

isolated or sporadic criminal activity [such that] RICO [becomes] a surrogate for garden-variety fraud actions properly brought under state law." *Id.*   Certainly, if this Court accepts Plaintiffs' allegations as true, it appears that Plaintiffs may have been defrauded in some manner.   Nonetheless, for the reasons delineated above, Plaintiffs have failed to present a case for a civil RICO violation.

## C. Conclusion

For the reasons stated herein, the Court hereby **GRANTS** Regions Bank's motion to dismiss (Doc. 29) to the extent it seeks dismissal of Count One of this matter and **DISMISSES** Count One *without prejudice.*   As Count Two hinges entirely upon the allegations set forth in Count One, the Court further **GRANTS** Regions Bank's motion to dismiss (Doc. 29) to the extent it seeks dismissal of Count Two as well.   Count Two is **DISMISSED** *without prejudice.*

Although this Court believes that the infirmities from which the RICO Counts suffer are incurable, the Court nonetheless **GRANTS** Plaintiffs a shortened period of leave to amend their complaint.   Plaintiffs have until on or before **Wednesday, August 28, 2007** to file an amended complaint, if they so desire.   If Plaintiffs choose not to file an amended complaint by that deadline, as all parties agree that in the absence of Counts One and Two this Court does not enjoy jurisdiction over Plaintiffs' pendant state law claims in Counts Three and Four, the Court will then dismiss Counts Three and Four *without prejudice* for lack of subject matter jurisdiction, and will close this case. Those pending motions to dismiss based on Plaintiffs' first complaint (Docs. 25, 27, 35, 45, 72) are hereby **DENIED AS MOOT.**

**IT IS SO ORDERED.**

**DATED this 21st day of August, 2007.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**